UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMARPREET DHALIWAL,

                        Plaintiff,          17 Civ. 7959

      -against-                        COMPLAINT

HYPR CORP. and GEORGE AVETISOV,

                       Defendants.
------------------------------------------------------------X

        Plaintiff Amarpreet Dhaliwal ("Peter" or "Dhaliwal"), by his undersigned attorneys, as and for his Complaint herein against defendants HYPR Corp. ("HYPR" or the "Company") and George Avetisov ("Avetisov"; with HYPR, "Defendants"), alleges as follows.

### Nature Of The Action

        1.    Dhaliwal introduced Avetisov to Dhaliwal's idea that would revolutionize data security: a "Hypercard", which would essentially be a personal digital access key for all aspects of one's life.

        2.    Dhaliwal's idea was for "cold" (i.e., not directly connected to the internet but rather using low energy Bluetooth) hardware in the form of a card/key/token that would serve as a separate, decentralized authentication device (through the use of blockchains) to transmit data and allow individuals to securely and easily engage in banking, transactions and other life activities (e.g., starting a car).  Since the Hypercard was not connected to the internet (to which obviously many (including hackers) have access) it would be far more secure than other authentication devices, which security was to be further bolstered by biometric measures (such as fingerprint swipes) and device specific protocols.

        3.    Avetisov agreed that the idea was a game-changer.  He wrote that "[t]he world won't be built around BITCARDS.  The world will be built around blockchains – and

Hypercard is the intermediary cold device that solves the security problem while replacing your wallet." Dhaliwal and Avetisov immediately became 50/50 partners in the enterprise.

4. Avetisov suggested memorializing the agreement in writing so neither of them would "pull a zuckerberg" on the other.

5. Accordingly, as more fully set forth below, the parties entered into a written agreement providing for them to be "50/50 partners" in the Hypercard business, and agreed that "[a]ny platform and software built on top of this [Hypercard] project is to be considered the result and product of a combined effort on behalf of both George Avetisov and Amarpreet Dhaliwal" (the "Agreement", a true and correct copy of which is annexed hereto as Exhibit A).

6. Since that time, the Hypercard business owned by Dhaliwal and Avetisov has become HYPR, a company with apparently over 25 million users, including major financial institutions and automotive businesses. It has raised $800,000 in an Angel Round, $3 million in a Seed Round, and a Series A capital raise of $8 million. Upon information and belief, HYPR has a valuation between $50-$100 million, and growing.

7. Avetisov is CEO of HYPR, yet Defendants have wrongfully refused to provide Dhaliwal with his 50% ownership interest (or any interest) in HYPR, or even acknowledge Dhaliwal as a Co-Founder, despite due demand (see demand letter dated August 31, 2017 (Ex. H hereto)). The foregoing is a breach of the Agreement, among other causes of action.

8. Accordingly, Dhaliwal brings this action to recover, inter alia, his rightful ownership of 50% of HYPR.

## The Parties, Jurisdiction and Venue

9. Dhaliwal is a citizen of the State of California.

10. Upon information and belief, HYPR is a corporation organized under the laws of Delaware, with a principal place of business at 45 West 34th Street, Suite 710, New York, NY 10001.

11. Upon information and belief, Avetisov is a citizen of the State of New York, with a business address at HYPR's office at 45 West 34th Street, Suite 710, New York 10001.

12. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

14. This Court has personal jurisdiction over Defendants because they are citizens of this State. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because HYPR resides in this District and a substantial part of the events and omissions giving rise to the claims herein occurred in this District.

Facts Common To All Claims

A.   Background.

15. Dhaliwal met Avetisov in April 2014. At that time, Avetisov was working on the concept of a prepaid BitsCard, essentially a simple Bitcoin debit/prepaid card, similar to a giftcard, using a QR code.

16. Shortly thereafter, Dhaliwal introduced Avetisov to the idea of creating a "Hypercard", which is "cold" (i.e., not directly connected to the internet but rather using low energy Bluetooth) hardware in the form of a card/key/token that would serve as a separate, decentralized authentication device (through the use of blockchains) to transmit data and allow individuals to securely and easily engage in banking, transactions and other life activities (e.g.,

starting a car). Since the Hypercard was not connected to the internet, it would be far more secure than other authentication devices, which security was to be further bolstered by biometric measures (such as fingerprint swipes), PINs and device specific protocols, and could therefore become a personal digital access key for all aspects of an individual's life.

17. Avetisov agreed that the idea was a game-changer. Avetisov wrote that "[t]he world won't be built around BITCARDS. The world will be built around blockchains – and Hypercard is the intermediary cold device that solves the security problem while replacing your wallet." Avetisov agreed that another advantage he and Dhaliwal had over others was that the two of them were thinking broadly about all data and creating a universal, cold, hardware-based, decentralized authentication device. (See Exhibit B hereto).

B.   The Agreement.

18. Avetisov suggested memorializing their agreement in writing so neither would "pull a zuckerberg" on the other (see Exhibit C). Dhaliwal and Avetisov entered into the following Agreement:

HYPERCARD START-UP AGREEMENT

This agreement is entered into by George Avetisov and Amarpreet ("Peter") Dhaliwal on April 30, 2014. **We, the afore-mentioned parties agree to be 50/50 partners in a company that develops a platform for the storage and transfer of digital assets including, but not limited to cryptographic hashes and any other blockchain based data**. Brillx Corp. is the current legal entity that will own and fund the aforementioned **project, tentatively named Hypercard, which is a 'cold' card that will allow consumers to transfer digital assets seamlessly and securely** . . . . Brillx Corp. will be the entity that starts development of this project, but this agreement will also hold in the event Brillx Corp. is reincorporated or merges as the result of any capital injection. **Any platform and software built on top of this project is to be considered the result and product of a combined effort on behalf of both George Avetisov and Amarpreet Dhaliwal**."

(Ex. A (emphasis added)).

19. Thereafter, Dhaliwal and Avetisov worked together regularly, primarily in

person but also through phone calls, text messages and emails, developing the Hypercard business (see, e.g., "white papers" annexed hereto as Exhibits D and E). They dropped the "e" from "Hyper" and named the device the "HYPR" card (see, e.g., prototype pictures annexed hereto as Exhibit F).

20. Avetisov repeatedly acknowledged that the product and business concept were incredibly valuable and revolutionary, stating in one email to Dhaliwal: "I cant put into words the level of originality we're hitting here by having an entirely cold card governed by a set of deterministic rules defined at manufacturing/genesis that provides access to something that's not really there unless you ask for it…mind blown" (see Exhibit G).

C.   Pursuant To The Agreement, Dhaliwal Is Entitled To 50% Of HYPR.

21. The HYPR business is exactly the same as the business and project created by Dhaliwal and worked on by Dhaliwal and Avetisov. HYPR offers a cold, decentralized authentication HYPR card which acts as a personal digital access key. Avetisov recently confirmed that many of HYPR's 25 million users are individuals working at financial institutions, as well as at other Fortune 500 companies such as automotive businesses, and the plan remains for the cold card to be used for smart homes, ATMs and connected cars. Avetisov recently repeated the prime benefit of the HYPR card, which was Dhaliwal's brainchild: It "forces[s] the hackers to go device to device to device . . . rather than attacking one enterprise and millions of people in one shot" (see, e.g., article at Exhibit I hereto).

22. Further, HYPR constitutes "[a]ny platform and software built on top of this [Hypercard] project", and hence "is to be considered the result and product of a combined effort on behalf of both George Avetisov and Amarpreet Dhaliwal" (see Agreement). Therefore, pursuant to the Agreement, Dhaliwal is entitled to 50% ownership thereof.

23. Significantly, the Agreement was never terminated. Nor was there any

winding-up of the assets, affairs or opportunities of the Hypercard business. To the contrary, Dhaliwal repeatedly confirmed to Avetisov that "the contract stands", and Avetisov did not disagree or contest the issue.

24. In any event, the Agreement provides that both Dhaliwal and Avetisov each own not only 50% of the HYPR business, but also "any platform and software built on top of the [Hypercard] project", which "*is to be considered* the result and product of a combined effort on behalf of both George Avetisov and Amarpreet Dhaliwal" (see Agreement (emphasis added)). The clear meaning of this specific provision is that Dhaliwal would and does continue to own 50% of whatever was built on top of their Hypercard project/platform/software, regardless of the extent of either party's go-forward involvement.

25. This makes perfect sense with regard to Dhaliwal's interest, as the HYPR project and business was Dhaliwal's idea, invention and innovation, and for this reason, among others, the parties agreed he would continue to own 50% thereof, as well 50% of any progress or improvements made thereon.

26. Accordingly, Dhaliwal is a 50% owner of HYPR and is entitled to corresponding equity and/or cash in the Company. Dhaliwal is also entitled to be recognized as a Co-Founder of HYPR, including on the website and in all documents and communications where the founding story is discussed.

27. By letter to Defendants dated August 31, 2017, Dhaliwal demanded, inter alia, his 50% interest in HYPR and to be recognized as a Co-Founder (see Exhibit H hereto (without exhibits)).

28. Immediately upon receipt of the letter, Avetisov repeatedly and in an absolute panic called and texted Dhaliwal attempting to dissuade Dhaliwal from seeking the

relief to which he is entitled. Tellingly, not once did Avetisov deny the existence of the parties' Hypercard Start-Up Agreement, its continuing validity, or claim that HYPR was not the same as or a mere continuation of their Hypercard business.

29. Nevertheless, Defendants have failed to provide any of the relief sought. Instead, Defendants have, upon information and belief, hired a private investigator to attempt to essentially "dig up dirt" on Dhaliwal. Sadly, Avetisov is apparently "pull[ing] a Zuckerberg" – the very act he initially claimed he wanted to avoid. Fortunately, however, the Agreement and Dhaliwal's rights thereunder are crystal clear.

FIRST CAUSE OF ACTION
(Breach of Contract)

30. Dhaliwal repeats and realleges each and every allegation set forth above as if fully set forth herein.

31. As set forth above, Dhaliwal and Avetisov agreed to be 50/50 partners in their Hypercard business and that "[a]ny platform and software built on top of this [Hypercard] project is to be considered the result and product of a combined effort on behalf of both George Avetisov and Amarpreet Dhaliwal" (see Agreement).

32. The HYPR business is exactly the same as the business in which Dhaliwal and Avetisov agreed to be 50/50 owners, using a "HYPR" card as a cold, decentralized authentication device using blockchains and biometric measures. Further, it constitutes "any platform and software built on top of this [Hypercard] project" and business, and therefore "is to be considered the result and product of a combined effort on behalf of both George Avetisov and Amarpreet Dhaliwal". Thus, Dhaliwal is entitled to 50% thereof.

33. Nevertheless, Defendants have refused to provide Dhaliwal with his 50% interest (or any interest) in HYPR, or even list him as a Co-Founder, despite due demand.

34. Thus, Avetisov has materially breached the Agreement.

35. Dhaliwal has substantially performed his obligations under the Agreement.

36. HYPR is a required and necessary party under Fed. R. Civ. P. 19(a)(1), and/or a "relief" defendant or "nominal" defendant, for purposes of the effectuation of a proper remedy, including but not limited to an award of the relief sought herein, as its interests are directly impacted by this action. In HYPR's absence, the Court will not be able to accord complete relief to Dhaliwal, including a 50% interest in HYPR (or 50% of Avetisov's share in HYPR), and/or HYPR claims an interest relating to the subject of this action and is so situated that disposing of this action in HYPR's absence may as a practical matter impair or impede HYPR's ability to protect its interest.

37. In the alternative, HYPR is a successor to the business of Dhaliwal and Avetisov and has successor liability as well.

38. As a consequence of the foregoing, Dhaliwal has been damaged in an amount to be determined at trial, including, but not limited to, and/or in the alternative, (i) the equivalent of a 50% interest in HYPR (in stock or cash), (ii) the equivalent of 50% of Avetisov's interest in HYPR (in stock or cash), (iii) 50% of the amounts paid by HYPR to Avetisov or a portion thereof, and/or (iv) other damages as the Court may allow, plus interest, costs, and attorneys' fees to the extent allowable by law.

SECOND CAUSE OF ACTION
(Unjust Enrichment, in the alternative, against Defendants)

39. Dhaliwal repeats and realleges each and every allegation set forth above as if fully set forth herein.

40. Defendants' receipt and retention of Dhaliwal's contribution to HYPR as

set forth above and Dhaliwal's 50% interest in HYPR have conferred an unearned and undeserved benefit upon Defendants, allowing Defendants to enrich themselves unjustly and at the expense of Dhaliwal. It is against equity and good conscience for Defendants to retain such sums and/or benefits without equity and/or compensation to Dhaliwal.

41. As a consequence of the foregoing, Dhaliwal has been damaged in an amount to be determined at trial, including, but not limited to, and/or in the alternative, (i) the equivalent of a 50% interest in HYPR (in stock or cash), (ii) the equivalent of 50% of Avetisov's interest in HYPR (in stock or cash), (iii) 50% of the amounts paid by HYPR to Avetisov or a portion thereof, and/or (iv) other damages as the Court may allow, plus interest, costs, and attorneys' fees to the extent allowable by law.

### THIRD CAUSE OF ACTION
(Declaratory Judgment)

42. Dhaliwal repeats and realleges each and every allegation set forth above as it fully set forth herein.

43. As set forth above, an actual, present and justiciable controversy has arisen as to whether Dhaliwal is entitled to a 50% interest in HYPR, a 50% interest in Avetisov's interest in HYPR, and/or whether Dhaliwal is also entitled to be recognized as a Co-Founder of HYPR, including on the HYPR website and in all documents and communications where the founding story is discussed.

44. As a consequence of the foregoing, Dhaliwal seeks judgment declaring that Dhaliwal is entitled to (i) the equivalent of a 50% interest in HYPR (in stock or cash), (ii) in the alternative, the equivalent of 50% of Avetisov's interest in HYPR (in stock or cash), and (iii) recognition as a Co-Founder of HYPR, including on the HYPR website and in all documents and communications where the founding story is discussed.

WHEREFORE, Dhaliwal demands judgment as follows:

(i) On the First and Second Causes of Action, damages in an amount to be determined at trial, including, but not limited to, and/or in the alternative, (i) the equivalent of a 50% interest in HYPR (in stock or cash), (ii) the equivalent of 50% of Avetisov's interest in HYPR (in stock or cash), (iii) 50% of the amounts paid by HYPR to Avetisov or a portion thereof, and/or (iv) other damages as the Court may allow, plus interest, costs, and attorneys' fees to the extent allowable by law;

(ii) On the Third Cause of Action, declaring that Dhaliwal is entitled to (i) the equivalent of a 50% interest in HYPR (in stock or cash), (ii) in the alternative, the equivalent of 50% of Avetisov's interest in HYPR (in stock or cash), and (iii) recognition as a Co-Founder of HYPR, including on the HYPR website and in all documents and communications where the founding story is discuss

(iii) For such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 16, 2017

SULLIVAN & WORCESTER LLP

By: /s/ Gerry Silver
Gerry Silver
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3096
Facsimile: (212) 660-3001
gerry.silver@sandw.com
ATTORNEYS FOR PLAINTIFF