UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
:
AMARPREET DHALIWAL, :
:
Plaintiff, : Civil Action No. 1:17-cv-07959 (GBD)
:
vs. : **(Oral Argument Requested)**
:
HYPR CORP. and GEORGE AVETISOV, :
:
Defendants. :
:
------------------------------------- X

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.     PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED.............1

II.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED................7

III.   HYPR CORP. SHOULD BE DISMISSED AS A DEFENDANT .....................................8

IV.    PLAINTIFF'S REQUEST TO REPLEAD SHOULD BE DENIED ...............................10

CONCLUSION..................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aguinaga v. UBS AG*,
  2010 WL 5093433 (S.D.N.Y. Dec. 14, 2010) ............................................................................9

*Akinde v. N.Y.C. Health and Hosp. Corp.*,
  2017 WL 4350587 (S.D.N.Y. July 7, 2017) ..............................................................................7

*AMS Capital Holdings Corps. v. Vista Strategic Advisory, LLC*,
  2008 WL 11351283 (S.D. Ohio June 10, 2008) .......................................................................9

*Antone v. General Motors Corp.*,
  473 N.E.2d 742 (1984)...............................................................................................................8

*Banco Cent. De Para. v. Para Humanitarian Found, Inc.*,
  2006 U.S. Dist. LEXIS 87093 (S.D.N.Y. Nov. 29, 2006)....................................................9, 10

*Becker v. Int'l Broth. of Teamsters*,
  2011 WL 1868362 (D. Minn. May 16, 2011)............................................................................9

*Bond v. City of N.Y.*,
  2015 WL 5719706 (S.D.N.Y. Sept. 28, 2015)...........................................................................7

*Cobble Hill Nursing Home v. Henry & Warren Corp.*,
  74 N.Y.2d 475 (1989) ................................................................................................................3

*Continental Cas. Co. v. Am. Home Assu. Co.*,
  2008 WL 1752231 (S.D.N.Y. Apr. 14, 2008)............................................................................9

*Davenport v. Int'l Broth. of Teamsters, AFL-CIO*,
  166 F.3d 356 (D.C. Cir. 1999) ...................................................................................................9

*DDCLAB Ltd. v. E.I. Du Pont De Nemours & Co.*,
  2005 WL 425495 (S.D.N.Y. Feb. 18, 2005)..............................................................................3

*Flani v. MacKay*,
  2007 WL 959308 (S.D.N.Y. Mar. 29, 2007) .............................................................................9

*Foxley v. Sotheby's Inc.*,
  893 F. Supp. 1224 (S.D.N.Y. 1995)...........................................................................................7

*Glasser v. Cohen*,
  2008 WL 4104024 (S.D.N.Y. Aug. 28, 2008) ...........................................................................2

*Goland v. Iglesias*,
   1988 WL 42052 (S.D.N.Y. Apr. 21, 1998)..................................................................8

*Gonzalez-Aviles v. Perez*,
   2016 WL 3440581 (D. Md. June 17, 2016)................................................................9

*Grusd v. Arccos Golf LLC*,
   2014 N.Y. Misc. LEXIS 2543 (Sup. Ct. N.Y. Cty. June 3, 2014).......................9, 10

*Hammerman v. Louis Watch Co.*,
   7 A.D.2d 817 (3d Dep't 1958)....................................................................................8

*Hines v. Grand Casinos of La., LLC*,
   140 F. Supp. 2d 701 (W.D. La. 2001)........................................................................9

*Korff v. Borbett*,
   155 A.D.3d 405 (1st Dep't 2017) ...............................................................................2

*Martin Delicatessen v. Schumacher*,
   52 N.Y.2d 105 (1981) ................................................................................................4

*MasterCard Int'l v. Visa Int'l Serv. Ass'n*,
   471 F.3d 377 (2d Cir. 2006).......................................................................................9

*Meisel v. Grunberg*,
   651 F. Supp. 2d 98 (S.D.N.Y. 2009)......................................................................2, 3

*In re Mid–Island Hosp., Inc. v. Empire Blue Cross & Blue Shield*,
   276 F.3d 123 (2d Cir. 2002).......................................................................................3

*Pavecon Holding Co. v. Tuzinski*,
   2017 WL 2539414 (E.D. Tex. May 19, 2017)...........................................................9

*Steel v. Watch Hill Mgmt.*,
   2010 WL 3290960 (S.D.N.Y. Aug. 11, 2010)............................................................7

*Swan Media Grp. v. Staub*,
   841 F. Supp. 2d 804 (S.D.N.Y. 2012)........................................................................3

*Tucker Anthony Realty Corp. v. Schlesinger*,
   888 F. 2d 969 (2d Cir. 1989)......................................................................................2

*Vasilas v. Subaru of Am., Inc.*,
   2009 WL 8447590 (S.D.N.Y. Aug. 5, 2009).............................................................7

*Vieux Carre Prop. Owners, Residents & Assocs., v. Brown*,
   875 F.2d 453 (5th Cir. 1989) .....................................................................................9

*Wright v. Ernts & Young*,
   152 F.3d 169 (2d Cir. 1998)..................................................................................................7

**Statutes & Other Authorities**

N.Y. Gen. Obligations Law § 5-1105 .......................................................................................2

Rule 19 ...................................................................................................................................9, 10

Plaintiff's opposition brief merely confirms that Plaintiff has no valid cause of action and that his Complaint should be dismissed.

I.      **PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED**

In his opposition, as in his Complaint, Plaintiff relies on the April 30, 2014 written agreement between the parties as the basis for his claims:

- "Dhaliwal clearly pleads the existence of an agreement, namely the written Agreement itself." (Opp'n at 10.)

- "[T]he Agreement should be enforced according to its terms." (Opp'n at 4.)

- "[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." (Opp'n at 9 (quoting case law).)

- "Dhaliwal is . . . asserting . . . a breach of the Agreement as written." (Opp'n at 10.)

Indeed, emphasizing the existence of a written agreement and then construing its terms, Plaintiff claims that a fundamental *quid pro quo* has been violated, that he has been denied benefits promised to him in return for his alleged contribution of an idea for a revolutionary new technology, that he has been excluded from a business based on his own alleged innovation. (Opp'n at 4-7.)

The first problem with Plaintiff's argument is that the terms of the written agreement do not support his claims. The agreement nowhere states that Plaintiff conceived of any idea or innovation, and nowhere states that Plaintiff is contributing any such idea or innovation in return for a future interest. Indeed, there is no factual recitation anywhere in the document that comports with his claimed role as an inventor. This silence is remarkable given Plaintiff's claim that his contribution of an idea was the essence of the consideration that he provided. (Opp'n at 3 ("Dhaliwal contributed the most important aspect of HYPR—the very innovation and invention.").) Significantly, the agreement lacks the types of terms one would expect to see if it

truly concerned an ideational contribution: non-disclosure and confidentiality provisions, exclusivity and non-competition provisions. Moreover, the agreement says nothing about either party's obligation to pursue this kind of project with only the other party. It does not expressly provide for any duty of loyalty, any relationship of mutual trust or confidence, or place limits upon the inclusion of other persons or parties.[1]

Since such terms are fundamental to Plaintiff's theory of the case and yet nowhere expressly set forth in the written agreement, Plaintiff must argue that they are implied, that they somehow arise from the general penumbra of the agreement when viewed in its proper context. (Opp'n at 11.) This approach cannot save his breach of contract claim, for two reasons. First, New York law is clear that any consideration provided before a contract is formed—here, Plaintiff alleges that he disclosed his revolutionary idea for a new technology to Defendant Avetisov before any contract was formed (Compl. ¶ 16)—must be expressly recited in a subsequent written agreement or it will not be regarded as consideration at all. That is, a mere implied term will not suffice. *Korff v. Borbett*, 155 A.D.3d 405, 408-09 (1st Dep't 2017) (past consideration is invalid unless "explicitly recited in a writing"); N.Y. Gen. Obligations Law § 5-1105 (past consideration valid "if the consideration is expressed in the writing").

Second, and more fundamentally, while some of the terms that Plaintiff seeks to imply might reasonably be implied in the context of a partnership agreement – such as terms requiring the parties to be loyal to each other to the exclusion of others, to safeguard the confidentiality of shared innovations and ideas, to refrain from competing with the partnership[2]—Plaintiff

---

[1] As discussed below, such terms might well be implied if the agreement is construed as a partnership agreement, but Plaintiff's opposition refuses to recognize the agreement as a partnership agreement. *See infra* at 2-3.

[2] Under New York law, partners owe each other fiduciary duties, including a duty of loyalty. *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F. 2d 969, 972-74 (2d Cir. 1989); *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009). Partners also cannot substitute other persons or parties without the prior assent of all partners. *Glasser v.*

adamantly refuses to recognize any partnership agreement here: "Dhaliwal is not asserting a cause of action for a breach of a partnership agreement." (Opp'n at 10 (emphasis in original).) Plaintiff instead seeks to construe the agreement as an ordinary arm's length conferral of an ownership interest (Opp'n at 10), but such agreements do not imply any broader obligations between the parties.[3]

All of this puts the fundamental problem with Plaintiff's breach of contract claim in clear perspective. Plaintiff began this case by touting the written agreement as a partnership agreement. (Compl. ¶ 31 ("Dhaliwal and Avetisov agreed to be 50/50 partners").) Indeed, the written agreement expressly refers to the parties as "50/50 partners." Yet, when Defendants pointed out in their motion to dismiss that the agreement is not valid and cannot be enforced as a partnership agreement, because it lacks material terms—including terms providing for the sharing of risks and losses and for joint management and control (Opening Br. at 8)—Plaintiff switched tacks and abandoned any claim that the agreement was a partnership agreement. Now Plaintiff has an even greater difficulty: it is impossible to base a claim for breach of contract on terms that are not expressly set forth in the contract and that cannot be implied.[4]

---

*Cohen*, 2008 WL 4104024, at *6 (S.D.N.Y. Aug. 28, 2008) ("[U]nless the parties have agreed otherwise, a person cannot become a member of a partnership without consent of all the partners." (citation omitted)).

[3] "[W]hen parties deal at arm's length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *In re Mid–Island Hosp., Inc. v. Empire Blue Cross & Blue Shield*, 276 F.3d 123, 130 (2d Cir. 2002) (citation omitted); *Meisel*, 651 F. Supp. 2d at 114 ("commercial transactions do not create fiduciary obligations, absent express language in the contract" (citation omitted)).

[4] Plaintiff's attempt to read more into the agreement than its terms actually provide, serves only to underscore the vague and indefinite nature of the agreement as a contractual document. At a minimum, the agreement, as drafted, does not objectively demonstrate the mutual assent of the parties to the implicit understanding proposed by Plaintiff. The Court, of course, cannot enforce any contract set forth in terms too indefinite to reflect a clear manifestation of what the parties actually agreed to. *Swan Media Grp. v. Staub*, 841 F. Supp. 2d 804, 808 (S.D.N.Y. 2012) ("[I]f the terms of the agreement are so vague and indefinite that there is no basis or standard for deciding whether the agreement had been kept or broken, or to fashion a remedy . . . then there is no enforceable contract") (citations omitted)) ; *DDCLAB Ltd. v. E.I. Du Pont De Nemours & Co.*, 2005 WL 425495, at *5 (S.D.N.Y. Feb. 18, 2005) (Daniels, J.) ("[F]or a contract to be binding, there must be a 'manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.'" (citation omitted)); *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482 (1989) ("If an agreement is not reasonably certain in

A further problem is that Plaintiff cannot simply ignore the partnership language that appears in the April 30, 2014 agreement and treat it as if it does not exist. The agreement states: the "parties agree to be 50/50 partners." (Compl. Ex. A.) This language is the essence of a partnership agreement. Indeed, the agreement provides that the existence of a partnership is a condition precedent for all other terms that follow; it is the very first term that is discussed. While the agreement goes on to discuss a "project," that project is envisioned as a shared project that necessarily includes a partnership. While Plaintiff attempts to define his contribution to the project solely in terms of his alleged *ex ante* contribution of an innovative idea (a contribution nowhere recognized in the text of the agreement itself), the agreement envisions performance obligations that exist only in the future, and not in the past: that parties are to be partners in a company that "develops a platform," that "starts development of this project." (Compl. Ex. A.) In short, by ignoring the concept of partnership and of a shared ongoing project, Plaintiff ignores the text of the agreement itself. And yet, Plaintiff cannot acknowledge the concept of partnership as an integral part of the April 30, 2014 agreement, because he would then have to concede that the agreement is unenforceable: he cannot pursue a claim for proceeds or profits, because he never agreed to share risks or losses; the one-paragraph agreement lacks material terms. (*See* Opening Br. at 8.)

While the defects in the written agreement as discussed above are alone sufficient to dispose of Plaintiff's breach of contract claim, the same claim suffers from numerous other dispositive flaws. Among other things, Plaintiff does not adequately plead performance, nor can he. His Complaint, lacking any specific allegations of performance, rests merely on the general

---

its material terms, there can be no legally enforceable contract."); *Martin Delicatessen v. Schumacher*, 52 N.Y.2d 105, 109 (1981) ("Before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained.").

4

conclusory allegation that "Dhaliwal has substantially performed his obligations under the Agreement." (Compl. ¶ 35.) As noted in our opening brief, such a general allegation is not legally sufficient to survive a motion to dismiss. (Opening Br. at 11.) Indeed, the only consideration expressly required of Plaintiff, as set forth in the written agreement, is that he tender a payment of $1 USD. Plaintiff concedes that his Complaint includes no allegation that he performed in that regard. (Opp'n at 14.) In his opposition, Plaintiff attempts to recast this obligation as a future payment obligation arising only after Defendant Avetisov has made a tender of shares. (Opp'n at 13). But the text of the agreement ("for the payment of $1 USD") suggests that the payment is to occur prior to, or contemporaneously with, the share transfer. As it is undisputed that the share transfer never took place, this Court should be skeptical of Plaintiff's request to amend his pleading to include a self-serving, uncorroborated allegation that he in fact made the required payment, especially considering his omission of the $1 USD clause from his Complaint's recitation of the terms of the agreement. (Opp'n at 14; Compl. ¶ 18.)

Plaintiff argues that he has adequately pleaded performance in other respects. First, he argues that he performed by "provid[ing] 50% of his Hypercard innovation to Avestisov, as the parties expressly agreed in the agreement to split ownership 50/50." (Opp'n at 11.) Such a performance obligation, if any, is nowhere set forth in the written agreement, which neither attributes any innovation to Plaintiff, nor expressly requires him to transfer any intellectual property.

Second, Plaintiff contends that he performed by not taking any steps to "cut out" or "exclude" defendant Avetisov from their shared project. (Opp'n at 11.) This is a meaningless claim because, as is clear from the face of the Complaint, the contemplated project was never pursued in any meaningful way. While the April 30, 2014 agreement contemplated that the parties would work together as 50/50 partners through a shared entity that would "start[]

development of this project" (Compl. Ex. A.), such a project never got off the ground. Instead, Plaintiff inexplicably went AWOL and abandoned the project before it could even begin. Indeed, the Complaint contains no substantive allegations that explain with particularity how Plaintiff actually contributed to the project or continued to be involved after the agreement was signed, and does not even attempt to account for his whereabouts after May 3, 2014, just a few days after the agreement was signed. (Opening Br. at 5.) It is hard to plead performance *in absentia*.

In his opposition, Plaintiff attempts to suggest that he actually stuck around to perform his obligations after the agreement was signed. (Opp'n at 12.) Although he attaches supplemental documents to his opposition, none bears a date suggesting that it was created after the agreement was executed. Even the attorney declaration that introduces these documents fails to provide any dates. (Silver Decl. (Dkt. No. 24) at ¶ 3.) Indeed, Plaintiff's counsel has apparently chosen not to respond to a request from defense counsel for additional information or metadata that would help fix the relevant chronology. (Ex. 3 to the Declaration of David H. Kupfer, filed Feb. 6, 2018.)[5] Tellingly, some of the documents provided by Plaintiff's counsel appear to include references to future dates in May and June 2014 by which certain contemplated tasks were to be performed. (Silver Decl. (Dkt No. 24), Ex. 2). The Complaint contains no allegations that Plaintiff performed or even attempted to perform any of these tasks; nor does it allege that he was even around at the time they were supposed to be performed or even in contact with Avetisov.

Whatever Plaintiff might say in an attempt to plead his own alleged performance after the

---

[5] While beyond the scope of this motion to dismiss, Defendants dispute that any of the documents attached to Plaintiff's opposition and claimed to bear his handwriting (Opp'n at 12) actually shows any substantive work product produced by Plaintiff.

agreement was executed, he has yet to offer any specific allegations that would support his own post-execution involvement in any meaningful way.[6] His breach of contract claim should be dismissed.

## II.     PLAINTIFF'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

Plaintiff's unjust enrichment claim should be dismissed because it sounds in quasi-contract and is wholly duplicative of his breach of contract claim. *Steel v. Watch Hill Mgmt.*, 2010 WL 3290960, at *1 n.1 (S.D.N.Y. Aug. 11, 2010) (Daniels, J.) (dismissing duplicative unjust enrichment claims that "do not state separate causes of action beyond the breach of contract claims"); *Vasilas v. Subaru of Am., Inc.*, 2009 WL 8447590, at *7 (S.D.N.Y. Aug. 5, 2009) (Daniels, J.) (same); *see also Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224, 1234 (S.D.N.Y. 1995) ("quasi-contractual claims are not available where an express contract exists").

Additionally, Plaintiff's unjust enrichment claim should be dismissed because it is time-barred. Plaintiff seeks to avoid California's two-year statute of limitations, as applied under New York's borrowing statute, by arguing that he was a New York resident at all relevant times, including at the time of his injury. (Opp'n at 19.) But his Complaint does not allege that he was a New York resident at the time (it merely alleges that he is currently a "citizen" of California (Compl. ¶ 9)), and the best available evidence shows that he was not: a May 2, 2014 email, attached to the Complaint and discussed in Plaintiff's opposition (Opp'n at 19), makes clear that, if Plaintiff maintained a New York address at the time, he was almost never there ("I spent most of this terrible winter out-of-state"). Indeed, in the same email, Plaintiff notes that he maintains three separate addresses, in three separate states, including Georgia, where his "wife lives," and

---

[6] In addition, Plaintiff cannot cure defects in his Complaint by asserting new facts and documents for the first time in his opposition brief. *Wright v. Ernts & Young*, 152 F.3d 169, 178 (2d Cir. 1998); *see also Akinde v. N.Y.C. Health and Hosp. Corp.*, 2017 WL 4350587, at *2 n. 1 (S.D.N.Y. July 7, 2017); *Bond v. City of N.Y.*, 2015 WL 5719706, at *5 (S.D.N.Y. Sept. 28, 2015).

California, as well as New York. (Compl. Ex. G.) This sort of transitory relationship with New York is insufficient to establish residency. *Goland v. Iglesias*, 1988 WL 42052, at *6 (S.D.N.Y. Apr. 21, 1998) (use of a bedroom even 50 or 100 times a year in sister's home does not support finding of residence (citations omitted)).

In his opposition, Plaintiff relies on and attaches a New York lease that bears his name, set to expire in July 2014. (Opp'n at 19; Silver Decl. Ex. 1). While a lease may be sufficient to establish a legal interest in a premises, it is not sufficient to demonstrate that the leaseholder actually resided there. *Hammerman v. Louis Watch Co.*, 7 A.D.2d 817, 818 (3d Dep't 1958) ("[T]he mere fact that [the plaintiffs] rented premises on a year round basis" does not establish residence.); *Antone v. Gen. Motors Corp.*, 473 N.E.2d 742, 744 (1984) (plaintiff not a New York resident, despite receiving his mail there). Indeed, as noted in our opening brief, Plaintiff disappeared after early May 2014, and the Complaint contains no allegations, and attaches no exhibits, to demonstrate that he was anywhere near New York after that point in time. (Opening Br. at 2.)

Considering Dhaliwal's California domicile, as pleaded in this action, and the acknowledgement of California residency attached to his Complaint (Civil Cover Sheet (Dkt. No. 5), listing address as "San Francisco, CA"), the borrowing statute applies and Plaintiff's unjust enrichment claim is barred by the applicable California statute of limitations.

**III.   HYPR CORP. SHOULD BE DISMISSED AS A DEFENDANT**

It is undisputed that HYPR was not a party to the April 30, 2014 agreement, did not breach any obligation set forth therein, and has no liability whatsoever for any of the causes of action that Plaintiff asserts in his Complaint. (Opp'n at 15 ("Dhaliwal does not claim that HYPR is a party to or breached the agreement.").) As such, HYPR cannot be added as a party under Rule 19. The law is clear that joinder is appropriate under Rule 19 only where the plaintiff has

an actionable claim against to the party he seeks to join. *Davenport v. Int'l Broth. of Teamsters, AFL-CIO*, 166 F.3d 356, 366 (D.C. Cir. 1999) (Rule 19 does not provide substantive right to sue a party; regardless of relief requested, plaintiff must have a legal claim against defendant added under Rule 19); *Vieux Carre Prop. Owners, Residents & Assocs., v. Brown*, 875 F.2d 453, 457 (5th Cir. 1989) ("[I]t is implicit in Rule 19(a) itself that before a party will be joined . . . as a defendant the plaintiff must have a cause of action against it.").[7]

Even if Plaintiff had a claim against HYPR (which he admittedly does not), HYPR would still not be a necessary party under any theory articulated by Plaintiff, because a "nonparty to a commercial contract . . . ordinarily is not a necessary party to an adjudication of rights under the contract." *Aguinaga v. UBS AG*, 2010 WL 5093433, at *9 (S.D.N.Y. Dec. 14, 2010) (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996)); *MasterCard Int'l v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 385 (2d Cir. 2006) (party not necessary even when additional litigation is a certainty); *Flani v. MacKay*, 2007 WL 959308, at *3 (S.D.N.Y. Mar. 29, 2007) (Daniels, J.) ("it is not enough, to be a necessary party under Rule 19(a), 'for a third party to be adversely affected by the outcome of the litigation'" (citation omitted)).

Plaintiff cites no authority in which a court has permitted joinder under Rule 19 in circumstances similar to this case. He relies on two authorities, *Banco Cent. De Para. v. Para Humanitarian Found, Inc.*, 2006 U.S. Dist. LEXIS 87093, at *32 (S.D.N.Y. Nov. 29, 2006) and *Grusd v. Arccos Golf LLC*, 2014 N.Y. Misc. LEXIS 2543, at *11, *19 n.7 (Sup. Ct. N.Y. Cty. June 3, 2014), both of which are readily distinguishable. In *Banco,* a third party had been joined

---

[7] *Accord Pavecon Holding Co. v. Tuzinski*, 2017 WL 2539414, at *3 (E.D. Tex. May 19, 2017); *Gonzalez-Aviles v. Perez*, 2016 WL 3440581, at *2 (D. Md. June 17, 2016); *Becker v. Int'l Broth. of Teamsters*, 2011 WL 1868362, at *3 (D. Minn. May 16, 2011); *AMS Capital Holdings Corp. v. Vista Strategic Advisory, LLC*, 2008 WL 11351283, at *4-5 (S.D. Ohio June 10, 2008); *Hines v. Grand Casinos of La., LLC*, 140 F. Supp. 2d 701, 705 (W.D. La. 2001); *see also Continental Cas. Co. v. Am. Home Assu. Co.*, 2008 WL 1752231, at *3 (S.D.N.Y. Apr. 14, 2008) (no risk of "hollow" relief "because every party from or against whom Plaintiffs seek relief on this matter is named as a defendant").

as a nominal defendant in a liquidation proceeding because it had been acting as a "trustee, agent or depositary" of the funds in question, and thus it had to be named in any judgment in order to facilitate the requested monetary relief.  2006 U.S. Dist. LEXIS 87093, at *33.  Here, by contrast, HYPR is not a trustee, agent or depository for Defendant Avetisov, and it does not need to be named to facilitate the award of any judgment against him.  *Grusd* is a New York state case that includes no discussion of Rule 19.  Accordingly, Defendant HYPR should be dismissed from this action and removed from the caption of this case.

### IV. PLAINTIFF'S REQUEST TO REPLEAD SHOULD BE DENIED

Plaintiff's Complaint should be dismissed with prejudice, and his request for leave to replead denied, because such amendment would be futile.  No additional allegations will expand the scope of the limited written agreement at issue here.

### CONCLUSION

For the foregoing reasons, Defendants' motion should be granted and Plaintiff's Complaint should be dismissed with prejudice.

Dated: New York, New York
       February 6, 2018

COOLEY LLP

By:  /s/Jonathan Bach
     Jonathan Bach
     David H. Kupfer

1114 Avenue of the Americas
New York, NY 10036
Tel:   (212) 479-6000
Fax:   (212) 479-6275
jbach@cooley.com
dkupfer@cooley.com

*Attorneys for Defendants
HYPR Corp. and George Avetisov*

10