```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
AMARPREET DHALIWAL,                         :
                                            :    17 Civ. 7959 (GBD)(DCF)
                        Plaintiff,          :
                                            :
            v.                              :
                                            :
HYPR CORP. AND GEORGE AVETISOV,             :
                                            :
                        Defendants.         :
---------------------------------------------------------X
```

## JOINT PRE-TRIAL ORDER

Pursuant to this Court's Individual Rules and Practices, plaintiff Amarpreet Dhaliwal ("Dhaliwal" or "Plaintiff") and defendants HYPR Corp. ("HYPR") and George Avetisov ("Avetisov"; collectively with HYPR, "Defendants") hereby submit this Joint Pre-Trial Order in this action.

1. **TRIAL COUNSEL:**

   For Plaintiff:

   > Gerry Silver, Esq.
   > Sullivan & Worcester LLP
   > 1633 Broadway
   > New York, NY 10019
   > Tel:  212.660.3096
   > Fax:  212.660.3001
   > gsilver@sullivanlaw.com

   For Defendants:

   > Jonathan Bach, Esq.
   > Jacob S. Wolf, Esq.
   > Shapiro Arato Bach LLP
   > 500 Fifth Avenue, 40th Floor
   > New York, NY 10050
   > Tel:  212.257.4897
   > Fax:  212.202.6417
   > jbach@shapiroarato.com
   > jwolf@shapiroarato.com

2. **JURISDICTION**:

At the time of the commencement of this action, Plaintiff was a citizen of the State of California; Avetisov was a citizen of the State of New York, and HYPR was a corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York.  The amount in controversy exceeds $75,000.  Hence, the parties agree that this Court has jurisdiction over this action pursuant to 28 U.S.C. §1332.

3. **BRIEF SUMMARY OF THE CLAIMS AND DEFENSES WHICH REMAIN TO BE TRIED**:

   A. **Plaintiff's Brief Summary:**

This is a breach of contract action.  Dhaliwal and Avetisov met at the Bitcoin Center in April of 2014.  Avetisov was exhibiting a "Bits Card", which was essentially a gift card containing the cryptocurrency Bitcoin.  Dhaliwal approached Avetisov with the prospect of thinking more broadly than the Bits Card -- a business focused on eliminating the need for traditional passwords (which are inputted using the internet, centrally stored and easily hacked) involving more secure and decentralized hardware such as a "cold" card, key or other hardware that would use digital assets, such as cryptographic hashes, for password authentication purposes in all aspects of an individual's life, from securely transferring money to providing access to online accounts to starting a car – a concept Avetisov acknowledged in writing as "original[]" and "mind-blow[ing]".  Dhaliwal and Avetisov worked together on developing the business.

To prevent either party from "pull[ing] a Zuckerberg", as Avetisov wrote and testified, the parties entered into a written agreement dated April 30, 2014 (the "Agreement"), providing that they would each own 50% of that business, which they named, and is now known as, HYPR, and that "[a]ny platform or software built on top of this project is to be considered the result and product of a combined effort on behalf of both George Avetisov and Amarpreet Dhaliwal".

Thus, the parties agreed that each owned 50% of the HYPR business, and that if either party went off and pursued the business on his own to the exclusion of the other, the other would be protected as he would "be considered", or deemed, a joint participant and be entitled to his 50% of the business.

In May and June 2014, Avetisov breached the parties' Agreement by surreptitiously misappropriating the business and Dhaliwal's 50% interest for his own and excluding Dhaliwal. Avetisov failed to transfer to Dhaliwal the 50% ownership of the entity they initially planned to use for the business, broke off communications with Dhaliwal, refused to answer or return Dhaliwal's phone calls, unilaterally and covertly replaced Dhaliwal with his childhood friend Roman Kadinsky, and secretly stole the business for himself without providing Dhaliwal with his 50% interest. To date, Avetisov has wrongfully refused to provide Dhaliwal with his 50% -- or any -- share of the HYPR business – the same and/or a clear continuation of the business Dhaliwal and Avetisov started together and that is covered by the Agreement, despite due demand and in clear breach of the Agreement. Dhaliwal asserts claims for breach of contract and unjust enrichment.

Defendants' defenses are without merit. The documentary evidence establishes that it was Dhaliwal's idea to focus the business on a more secure and universal mode of password authentication, but in any event they at the very least developed the idea jointly (Avetisov repeatedly references it in writing as "our idea"). Regardless, the Agreement and the enforcement thereof does not hinge on whose idea it was. The underlying consideration and quid pro quo is, inter alia, that (i) each party is agreeing to a legal detriment, namely to forebear from, or to give up his legal right or freedom to, pursue the business on his own without providing the other with his 50%, and (ii) each party gets the benefit or protection that the other is restricted

from excluding the other without providing the other with his 50% (i.e., so neither party could "pull a Zuckerberg").

Defendants' other arguments fail. Dhaliwal performed and/or honored the Agreement before and even after Avetisov's breach; it was Avetisov who ceased answering or returning Dhaliwal's phone calls (the last attempted communication were phone calls from Dhaliwal to Avetisov); there is nothing in the Agreement that requires particular work to be done by either for the Agreement to be enforceable but in any event Dhaliwal performed work until he was excluded; the documentary evidence and testimony establishes that HYPR today is a direct continuation of the HYPR business pre-breach with the same overarching purpose (decentralized password authentication for a variety of use cases) and the platform or software in use by HYPR today was built on top thereof; and HYPR remains a necessary defendant to effectuate the remedy of transferring founders' or common stock in HYPR to Dhaliwal. Avetisov's fraudulent inducement counterclaim fails because Avetisov cannot prove any of the elements of fraudulent inducement, including any misrepresentations, intent to deceive, reasonable reliance or damages.

B.   **Defendants' Brief Summary**:

As set forth in his Complaint, plaintiff Dhaliwal claims that he came up with an "idea" for a technology and a related business, and then shared his idea with Defendant Avetisov. He claims that, after Avetisov agreed in writing to proceed with him on a 50/50 basis, Avetisov cut him out, founding HYPR, a start-up company, without him. Avetisov denies the allegations and will principally present the following defenses at trial:

1.   Dhaliwal, who had no background as an inventor, did not come up with any idea for a technology or business. Avetisov, an inventor with a technological background, came up with the idea before he met Dhaliwal.

2. The written agreement they signed nowhere states that Dhaliwal was entitled to a 50% interest based on any contribution of an idea. It is silent with respect to any ideational contribution by Dhaliwal. Indeed, the agreement, by its terms, does not include any form of consideration to be provided by Dhaliwal (with the possible exception of $1, which he did not provide) and is therefore unenforceable.

3. To the extent the parties intended to enter a binding agreement, it is clear from the content of their surrounding discussions and related documents, including at or about the time the agreement was signed, that Dhaliwal was expected to perform his side of the agreement not by having provided an idea, but by managing the business end of the new venture as it moved forward. Among other things, it was agreed that, Dhaliwal, who claimed to have an impressive background in business and finance, would develop presentations for and locate potential investors while Avetisov continued to develop the underlying technology.

4. Instead of performing his anticipated business role, Dhaliwal abandoned the project in or around May 2014, approximately one month after first meeting Avetisov and before he had performed any significant work on the project. Avetisov did not cut him out, but rather sent several text messages asking him to confirm his interest and inviting him to participate. Dhaliwal then disappeared for years, without registering any sign of complaint with Avetisov. He resurfaced only when learning that HYPR had succeeded in raising start-up capital, and then he demanded a 50% share. Dhaliwal's failure to perform his anticipated business role, or to do any work at all while others worked night and day to get the new venture off the ground, deprives him of any claimed benefit of the bargain.

5. In any event, the written agreement Dhaliwal relies upon is limited by its terms to any platform "built on top of" the project contemplated therein. HYPR today is not in any way

built upon the project contemplated in the agreement.  Contrary to the terms of agreement, HYPR does not rely on a cold card or any other stand-alone piece of hardware, does not utilize blockchain technology in any of its products or offerings, and HYPR products do not make use of any blockchain-based data or cryptocurrency.  Indeed, HYPR's business platform changed after its initial plans met with failure in or around early 2015.  Having added new personnel and switched business models, HYPR today is an enterprise-facing business, not a consumer-facing business, offering enterprise-level security products and services.

6. It is undisputed that HYPR did not exist when Dhaliwal interacted with Avetisov in 2014, is not a party to the written agreement, and has no liability.  At this stage, HYPR should be dismissed as a defendant.  *See* transcript of oral argument on motion to dismiss, dated February 27, 2018 (ECF No. 29 at pp. 64-66).

7. Defendants will also rely upon the affirmative defenses as asserted in their Amended Answer and Motion to Dismiss, including but not limited to the statute of limitations defense set forth in their motion to dismiss.

Separately, Defendant Avetisov has asserted a counterclaim for fraudulent inducement and, on that basis, seeks rescission of the written agreement (to the extent it is binding at all).  In discussions leading up to the execution of the written agreement, including during the hours just before it was signed, Dhaliwal made numerous false and material representations and omissions to Avetisov (both orally and in writing) about his business background and experience in the financial world.  Among other things, he provided a false and misleading account of his employment history, failing to disclose that he was effectively terminated from his first and only two positions of employment after relatively short periods of time.  He also falsely presented a business document as his own work product when in fact he had misappropriated it from one of

his prior employers.

4. **JURY/NONJURY**:

This case is to be tried by the Court, except that Avetisov has requested a jury with respect to his counterclaim for rescission based upon fraudulent inducement (the "Counterclaim"). It is Plaintiff's position that Avetisov waived his right to a jury with respect to his Counterclaim because he failed to request a jury when filing his original answer, which contained an affirmative defense of fraudulent inducement. The parties have been meeting and conferring on this issue, but absent a swift resolution Plaintiff will be moving to strike Avetisov's jury demand in the near future. The parties estimate that 2-3 trial days will be needed.

5. **TRIAL BY MAGISTRATE JUDGE**:

None of the parties have consented to a trial by the Magistrate Judge.

6. **STIPULATIONS OF STATEMENTS OF FACT AND LAW WHICH HAVE BEEN AGREED UPON BY ALL PARTIES.**

At this time, no stipulations or statements of fact or law have been agreed upon by the parties.

7. **STATEMENT BY EACH PARTY AS TO EACH WITNESS WHOSE TESTIMONY IS TO BE OFFERED IN ITS CASE-IN-CHIEF (IN PERSON OR BY DEPOSITION)**:

    A. **For Plaintiff**:

    (i) Plaintiff (in person);

    (ii) Avetisov (by deposition);

    (iii) Kadinsky, HYPR Chief Operation Officer (by deposition);

    (iv) Bojan Simic, HYPR Chief Technology Officer (by deposition); and

    (v) Bruce Webster, Plaintiff's technology expert (in person).

B. **For Defendants:**

(i) George Avetisov (in person);

(ii) Amarpreet Dhaliwal (by deposition or in person);

(iii) Roman Kadinsky (in person);

(iv) Bojan Simic (in person);

(v) Olivier Boireau (by affidavit per stipulation between the parties that the affidavit may be used as if it were deposition testimony).

Please note that Defendants will move under *Daubert* to exclude Plaintiff's proposed expert Bruce Webster.

8. **DESIGNATION BY EACH PARTY OF DEPOSITION TESTIMONY TO BE OFFERED IN ITS CASE-IN-CHIEF WITH CROSS DESIGNATIONS AND OBJECTIONS**:

See Exhibit A hereto.

9. **A LIST BY EACH PARTY OF EXHIBITS TO BE OFFERED IN ITS CASE-IN-CHIEF, WITH ONE ASTERISK INDICATING NO OBJECTION ON GROUNDS OF AUTHENTICATION AND TWO ASTERISKS INDICATION NO OBJECTION ON ANY GROUND.**

See Exhibit B hereto. Please note that the parties have agreed to admissibility of nearly all of the exhibits listed, except that (i) Plaintiff objects to Defendants' proposed Exhibits 5 and 145 on relevance grounds and Defendants' proposed Exhibits 51 and 52 on grounds of authenticity; and (ii) Defendants object to Plaintiffs' proposed Exhibits 54-57 as they relate to Plaintiff's expert report of Bruce Webster, which Defendants will be moving to exclude as referenced above, Plaintiffs' proposed Exhibits 80-81 on hearsay and relevance grounds, and Plaintiff's proposed Exhibit 87 on timeliness, and Defendants reserve their right to supplement its exhibit list and production in response to that proposed exhibit.


Dated: September 18, 2019

| SULLIVAN & WORCESTER LLP | SHAPIRO ARATO BACH LLP |
|---|---|
| /s/ Gerry Silver | /s/ Jonathan Bach |
| Gerry Silver, Esq. | Jonathan Bach, Esq. |
| Sullivan & Worcester LLP | Jacob S. Wolf, Esq. |
| 1633 Broadway | Shapiro Arato Bach LLP |
| New York, NY  10019 | 500 Fifth Avenue, 40th Floor |
| Tel: 212.660-3096 | New York, NY 10050 |
| Fax: 212.660-3001 | Tel:  212.257.4897 |
| gsilver@sullivanlaw.com | Fax:  212.202.6417 |
|  | jbach@shapiroarato.com |
|  | jwolf@shapiroarato.com |